Sullivan,  }
Jan. 7, 1902. }

DICKINSON v. FARWELL.

A non-resident is privileged from arrest upon civil process while in attendance as a witness before a referee in an action pending in a court of this state.

The giving of bail by a non-resident witness held in custody upon civil process does not of itself constitute a waiver of his privilege from arrest.

TROVER. Facts agreed, and case transferred from the May term, 1901, of the superior court by *Peaslee*, J.

The defendant, a resident of New York, while in attendance as a witness before a referee in an action pending in the superior court for Sullivan county, was arrested upon the *capias* writ in this action, and in a short time furnished bail without objecting to the arrest. He left the witness stand a few moments before the arrest, but was not discharged from further attendance, and testi-

fied subsequently. On the first day of the May term, 1900, to which the writ was returnable, he appeared specially and moved for a discharge from arrest, a release of the bail, and a dismissal of the action; and on the third day of the term he pleaded in abatement an exemption from arrest and service of process.

*Streeter & Hollis,* for the plaintiff.

*Hermon Holt,* for the defendant.

CHASE, J.    " Parties and their witnesses are privileged from arrest while going to, attending upon, and returning from the trial of an action.    A person who procures an arrest in violation of the privilege is guilty of contempt of court; and the action in which the arrest is made is subject to abatement for want of proper service."    *Ela* v. *Ela,* 68 N. H. 312, 313.    The privilege was not established for the benefit of the persons privileged, but to protect the administration of justice.    *State* v. *Buck,* 62 N. H. 670. It extends to parties and witnesses attending a hearing before a referee.    *Ib.; Larned* v. *Griffin,* 12 Fed. Rep. 590, and authorities cited; *Parker* v. *Marco,* 136 N. Y. 585.

The plaintiff does not deny that the defendant was entitled to the privilege at the time of his arrest, but says that he waived it by giving bail. . Among the authorities which the plaintiff relies. on, in support of this position, are the following: *Brown* v. *Getchell,* 11 Mass. 11; *Fletcher* v. *Baxter,* 2 Aik. 224; *Petrie* v. *Fitzgerald,* 1 Daly 401; *Bours* v. *Tuckerman,* 7 Johns. 538; *Farmer* v. *Robbins,* 47 How. Pr. 415.    In Massachusetts the law is now settled the other way.    *Baker* v. *Copeland,* 140 Mass. 342.    The plaintiff in that case contended that the giving of a bail-bond by the defendant was a waiver of his right to object to the service, but the court said that " the bond was given *alio intuitu,* to procure his discharge from imprisonment, and the fact that he gave it does not indicate that he surrendered his right to object, upon the return of the writ, that the service was illegal."    In *Washburn* v. *Phelps,* 24 Vt. 506, 507, Judge *Redfield,* after stating that it had been regarded as settled law in the state, before the enactment of a recent statute, that a mere privilege could not be pleaded in abatement of the suit, and that courts had been astute in devising grounds upon which to presume a waiver of the privilege,— evidently referring to *Fletcher* v. *Baxter, supra,* and *Booraem* v. *Wheeler,* 12 Vt. 311,— says: " It is not esteemed any good ground for presuming a waiver of privilege from arrest because the person takes the ordinary and most expeditious mode of freeing himself from arrest."    See, also, *In re Healey,* 53 Vt. 694.    The law in

New York seems to be in conflict with the plaintiff's position, notwithstanding the cases cited by him as above. *Parker* v. *Marco*, 136 N. Y. 585; *Mackay* v. *Lewis*, 7 Hun 83. There are cases in other jurisdictions to the same effect. *United States* v. *Edme*, 9 S. & R. 147; *Larned* v. *Griffin*, 12 Fed. Rep. 590. In a recent Rhode Island case the court refer to the cases in which this view of the law is taken, especially *Larned* v. *Griffin*, but in the decision follow a *dictum* of the court of that state in an earlier case (*Waterman* v. *Merritt*, 7 R. I. 345) taking a contrary view. The court say: "Even the *dictum* of a court, which has come to be understood as the law of the state, should not be lightly disturbed, and as the rule stated in *Waterman* v. *Merritt* is not unreasonable and is in line with the recent decisions of this court, we feel constrained to follow it." *Ellis* v. *Degarmo*, 17 R. I. 715. Such being the ground of the decision, the case can have no weight as an authority in other jurisdictions. See, also, *Capwell* v. *Sipe*, 17 R. I. 475.

There are cases in this state having a bearing upon the question, the earliest of which is *Hubbard* v. *Sanborn*, 2 N. H. 468. It was an action of assumpsit, and the defendant was arrested upon the writ. The records of the court show that he gave bail, although this fact is not stated in the report of the case. The defendant pleaded in abatement of the writ, that his arrest took place on the day of a town meeting holden for the choice of electors of president and vice-president, at which the defendant was entitled to vote. The writ was abated on the ground that the service was " altogether illegal and void." The question of waiver is not considered in the opinion. The court, through *Richardson*, C. J., say: " The arrest was against the express provisions of a statute and illegal, yet if the defendant cannot abate the writ, what remedy has he? Relief upon a *habeas corpus* would come too late to answer the object of the statute. The sheriff is not liable; nor is the plaintiff liable, because the arrest may be without his knowledge. But if the writ abates, the bail whom the defendant may procure will be discharged; and a knowledge of this may facilitate the procurement of bail by persons illegally arrested."

*Woods* v. *Davis*, 34 N. H. 328, was an action of trespass against a collector of taxes for arresting the plaintiff by virtue of a tax warrant, while he was in attendance upon a town meeting. It was held that the action could not be maintained, as the defendant acted under valid process in making the arrest " and was under no obligation to take notice of the plaintiff's privilege, had it been claimed." The plaintiff's counsel cite this case in their brief, and make the following quotation from the opinion : " The case finds that nothing was said by the parties about the plaintiff's voting or

his right to vote, and that the defendant, at the plaintiff's request, sent for a friend of the plaintiff, who, after consultation with the plaintiff, paid the tax at his request. It does not find that the plaintiff objected on the ground of his privilege as a voter, or that he made any claim of exemption from arrest on that account. It might well be doubted whether, under these circumstances, the plaintiff should not be considered as having waived his privilege and submitted himself voluntarily to the custody of the collector. A waiver and voluntary submission we think might fairly be presumed, there being no allegations to the contrary in the statement of facts agreed upon by the parties. If there were such waiver, the plaintiff could not afterward object to the imprisonment as unlawful, if he might otherwise have done so." This was mere *dictum*, as the case was decided on the ground above stated. There may be cases in which it can be fairly said that the submission of a person to arrest by an officer holding process against him for the purpose, is voluntary otherwise than in the limited sense of yielding to the majesty of the law ; but if so, they must be exceptional and rare. Ordinarily, a person will not of his own choice, unconstrained by the force of impending process, submit himself to arrest. Neither is it apparent of what use the interposition of an objection by the plaintiff to his arrest in the above case could have been to him or to the defendant, especially if the validity of the arrest depended upon questions which the defendant was not bound or qualified to determine, as is stated in a previous part of the opinion. This case cannot be regarded as an authority upon the question of waiver.

*Jacobs* v. *Stevens*, 57 N. H. 610, was an action of assumpsit. The defendant was arrested upon the *capias* writ in the action having the required affidavit indorsed upon it, and gave bail. He appeared at the term of court to which the writ was returnable, and moved that he and his bail be discharged because he was not liable to arrest. The motion was granted, and his attorneys, appearing specially, moved within the first four days of the term to dismiss the action on the ground that the writ was not legally served, and offered to prove that the defendant was not liable to arrest. The evidence was excluded, subject to exception. The exception was overruled. Judge *Foster* in his opinion says, in substance, that the bail given by the defendant was special; that its office was to procure the appearance and attendance of the defendant in court; that by it the defendant and his bail agreed that the defendant should appear to answer to the action, and should satisfy the plaintiff's judgment or surrender his body to be taken in execution, or that the bail would pay the judgment; that the defendant might have avoided the giving of bail by procuring a discharge from ar-

rest upon application to two justices of the peace, and in that event the service would have been defeated (*Chadbourn* v. *Bank*, 24 N. H. 333); that having given bail, the defendant was properly in court and subject to the court's jurisdiction; that as the alleged defect in the service did not appear of record, the court would not take notice of it without a plea in abatement, even if the facts were agreed to; and that "in several jurisdictions it has been held that giving bail is equivalent to an appearance in court and a submission to the jurisdiction," citing and commenting upon several cases. He concludes the opinion as follows: "Upon all the considerations thus expressed, I am of the opinion the defendant's exception should be overruled." Judge *Smith* concurred without stating his reasons. Chief Justice *Cushing* gave the following reasons for his concurrence: The process was duly served; the statute (G. S., *c*. 207, *s*. 1, now P. S., *c*. 222, *s*. 1) provides that in such case, if the defendant neglects to appear at the return term of the writ, "his default shall be recorded and judgment shall be rendered against him"; the defendant in fact did not appear, as the appearance of his counsel was accompanied with an "express reservation that they did not appear so as to submit themselves to the jurisdiction of the court"; the arrest being legal carries with it all the consequences of such an arrest except as modified by the statute — one modification being that the defendant may be discharged upon motion at the return term; the statute relating to such discharge speaks in the present tense — "the court, upon satisfactory evidence that the defendant does not conceal his property," etc., may order the discharge; the discharge of the defendant therefore does not show that he did not conceal his property, etc., at the time of his arrest, and was not then liable to arrest, but only that he was not so liable at the time of his discharge. He concludes his opinion as follows: "It being expressly enacted that after the service of process and return of the same to the court, the defendant, if he do not appear, shall be defaulted,— and in this case the defendant not having appeared,— the default was rightly ordered."

A hasty examination of these opinions might lead a person to regard the case as an authority for the plaintiff in this action, but a careful examination shows that there is a wide difference in the cases. The real point decided was, that a defect in the service of a writ, not apparent upon the record, will not be considered upon a motion to dismiss, and so the excluded evidence was irrelevant to any question that was before the court. The case was cited by Judge *Foster* upon a question of this kind in *Rogers* v. *Buchanan*, 58 N. H. 47. The refusal of courts to consider such a question upon a motion to dismiss was one of the considerations which

Judge *Foster* expressed as the basis of his opinion; and it appears from Chief Justice *Cushing's* reference to the tense in which the statute is expressed, providing for the discharge of a person arrested upon a writ founded on a contract, that he had the point in mind.    The record showed that the defendant was discharged from arrest at the return term of the writ, but this fact was consistent with a legal arrest, since there may have been a legal cause for an arrest at the time it was made.    *California Wine Co.* v. *Murray*, 62 N. H. 597.

Blackstone says : " When the defendant is regularly arrested, he must either go to prison for safe custody, or put in special bail to the sheriff.    For the intent of the arrest being only to compel an appearance in court at the return term of the writ, that purpose is equally answered, whether the sheriff detains his person, or takes sufficient security for his appearance, called bail (from the French word *bailler*, to deliver) because the defendant is bailed or delivered to his sureties, upon their giving security for his appearance; and is suffered to continue in their friendly custody instead of going to gaol. . . . Upon the return of the writ, or within four days after, the defendant must appear according to the exigency of the writ.    The appearance is effected by putting in and justifying bail to the action; which is commonly called putting in bail above. . . . The bail above, or bail to the action, must be put in either in open court, or before one of the judges thereof; or else, in the country, before a commissioner. . . . These bail . . . must enter into a recognizance . . . whereby they do jointly and severally undertake, that if the defendant be condemned in the action, he shall pay the costs and condemnation or render himself a prisoner, or that they will pay it for him."    3 Bl. Com. 290, 291.    In this state the appearance of the defendant is effected in a different way; that is, by an entry upon the docket stating the fact of his appearance in person or by attorney.    If he appears and answers to the action upon its merits and is defeated, bail here undoubtedly has the force of both bail below and bail above, at common law. But an appearance may be made for the sole purpose of objecting to the court's jurisdiction for want of legal service of the writ. Such an appearance is usually made by designating it as special. *Wright* v. *Boynton*, 37 N. H. 9, 18, 19; *Roberts* v. *Stark*, 47 N. H. 223, 225; *Merrill* v. *Houghton*, 51 N. H. 61.    The forms given by Chitty for pleas in abatement of privilege by attorneys begin thus : " And the said defendant in his own proper person comes and defends," etc.    2 Ch. Pl. 895; 1 *Ib.* 427, 428.    This is the usual form of pleas in abatement. ˙ An appearance for such special purpose answers the requirement created by giving bail; and if the defendant is successful, no reason is perceived why the judgment in his

favor should not have the same effect upon the bail that it would have if rendered upon an issue of law or fact in regard to the merits of the action. The obligation to surrender the defendant's body to be taken in execution or to pay the plaintiff's judgment is necessarily subject to the condition precedent that the plaintiff recover a judgment and execution. Judge *Foster's* remarks in *Jacobs* v. *Stevens* are not inconsistent with this view of the character of the contract entered into by bail in this state. As there was no plea in abatement in the case, and the motion to dismiss did not raise the question, the adequacy of a special appearance to answer the contract of bail, so far as the contract concerned appearance, was not considered. Chief Justice *Cushing's* remarks relating to appearance must have been limited in reference to the special circumstances of the case. It is reasonably certain that he did not mean to be understood that a defendant appearing specially in an action, and filing a plea in abatement of defective service, must be regarded as defaulted because he did not enter a general appearance and the return showed that the process was duly served upon him.

*Jacobs* v. *Stevens* is also distinguishable from the present case in this important particular: The defendant and his bail were discharged for a cause that was in existence at the date of the discharge, but not necessarily at the date of the arrest; while in this case, the cause alleged by the defendant existed at the date of the arrest and rendered the arrest illegal.

To recapitulate the New Hampshire cases: *Hubbard* v. *Sanborn* comes very near being an authority in favor of the defendant; the remarks of the court in *Woods* v. *Davis*, quoted by the plaintiff, are *dicta* expressed doubtingly and without an examination of the authorities; *Jacobs* v. *Stevens* is widely distinguishable from the present case; *State* v. *Buck* is an authority that the privilege of a witness is established to protect the administration of justice by removing an obstruction to the free and unrestricted attendance of witnesses at trials, and that its violation, being contempt of court, is punishable; and *Ela* v. *Ela* is an authority that such violation is cause for abating the action. Although the question has not been definitely decided, the first of these cases and the last two tend strongly to show that the giving of bail by a witness arrested in a civil action while entitled to the privilege is not, of itself, sufficient to constitute a waiver of the privilege. An arrest under such circumstances is illegal. The witness by giving bail acknowledges the fact of the arrest, but not its validity. He elects to be in the nominal custody of persons of his own selection, rather than in the actual custody of the sheriff or jailer, while the arrest continues in force. To protect the administration of justice, it is oftentimes necessary that he shall be released from actual custody

as soon as possible. There was evidently such necessity in this case. The release can usually be effected more conveniently, expeditiously, and surely by giving bail than in either of the other methods provided by law. It is apparent that the hearing before the referee in this case must have been more or less delayed and embarrassed if the defendant, instead of giving bail, had attempted to procure a discharge by applying to a justice of the court for a release, or for a writ of *habeas corpus*. P. S., *c.* 221, *s.* 12 ; *Ib.*, *c.* 239. Relief in either of those ways would come too late to answer the demands of justice. Freedom to give bail without prejudice to the rights of the witness is as necessary to protect the administration of justice as is exemption from the service of process. The considerations which have established the latter privilege equally require the former. As was said in *Hubbard* v. *Sanborn*, a knowledge that the writ can be abated and the bail be thereby discharged " may facilitate the procurement of bail by persons illegally arrested." This knowledge will have a tendency to prevent the interruption and perhaps the defeat of trials, by enabling witnesses who have been illegally arrested to obtain bail when otherwise they would not be able to do so.

It is said in behalf of the plaintiff that the giving of bail without asserting the privilege ought to be regarded as a waiver of the privilege, because the plaintiff may rely upon the arrest as legal and so fail to avail himself of the opportunity to make other service of the writ after the privilege ceases, in case the defendant remains in the jurisdiction. This argument ignores the fact that the privilege was established to protect the administration of justice, and treats it as wholly a personal matter. It also assumes that it is the duty of the defendant, when about to be arrested, or at least before giving bail, to assert the illegality of the arrest and declare his purpose to avail himself of it to abate the action — an assumption that conflicts with the general rule that if a person deprives another of his liberty, he does it at his peril. If the plaintiff does not know of the facts which create the privilege,— of the defendant's attendance upon a court as a witness, for example,— and the defendant is aware of the plaintiff's ignorance, he may possibly waive the privilege by omitting to disclose the facts. But it is not necessary to decide that question, for it is not claimed that the plaintiff was ignorant of the reason why the defendant happened to be within the jurisdiction at the time of his arrest. Nor is it necessary to decide what would have been the plaintiff's rights under the circumstances as to making other service of the writ if the defendant had remained in the state after his exemption from arrest ceased, for it does not appear that such was the fact. It may be suggested, however,

that the plaintiff might be at liberty to discharge the defendant from arrest and release his bail, and then to make service of the writ anew. If it should turn out that the plaintiff was disabled from making another service, the disability would be attributable to the plaintiff's mistake and not to a defect in the law.

The weight of authority in other jurisdictions, the tendency of the decisions in this state, and the reasons bearing upon the question, all show that the giving of bail is not, of itself, a waiver of the privilege of exemption from arrest. By applying this and the other principles of law before mentioned, together with the provisions of sections 10 and 12, chapter 221, Public Statutes, to the facts reported, it follows that the defendant is entitled to be discharged from arrest, and his bail are entitled to be released; and the plea in abatement, having been seasonably filed (Rule of Court No. 11, 56 N. H. 581), the defendant is entitled to judgment upon it.

*Case discharged.*

WALKER, J., did not sit: the others concurred.